IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VANDER DAVIS, #323-484 | * | |
| Plaintiff, | * | |
| v | * | Civil Action No. DKC-17-3521 |
| MARYLAND CORRECTIONAL INSTITUTION, JESSUP, | * | |
| BOGUCKI ZYGMUNT, *Physician's Ass't.*, | * | |
| MICHAEL GUA, *Ass't. Nurse*, | * | |
| BARBARA STEELE, *Head Nurse*, | * | |
| YONAS SISAY, M.D., | * | |
| VIVIAN LEE BAILEY, *Case Manager*, | * | |
| WEXFORD HEALTH SOURCES, INC., | * | |
| MARYLAND DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES, and | * | |
| CARROLL PARRISH, | * | |
| Defendants. | * | |

***

## MEMORANDUM OPINION

Plaintiff Vander Davis filed this complaint with attachments pursuant to 42 U.S.C. § 1983, raising Eighth Amendment claims of inadequate medical care, unconstitutional conditions of confinement, and negligence. ECF No. 1 at 10; ECF No. 1-2 at 3.[1] Defendants Wexford Health Sources, Inc., Barbara Steele, R.N., and Yonas Sisay, M.D., (collectively, the medical defendants) by their attorneys, filed a motion to dismiss (ECF No. 11), to which Davis filed a response in opposition (ECF No. 20), the medical defendants filed a reply (ECF No. 25), and Davis filed a surreply (ECF No. 29). The medical defendants filed a motion to strike the

---

[1] Unless otherwise specified, ECF citations refer to the electronic docket in the instant case, DKC-17-3521.

surreply, which will be granted. ECF No. 30.[2] Defendants, Maryland Correctional Institution–Jessup (MCI-J), the Maryland Department of Public Safety and Correctional Services (DPSCS), MCI-J Warden Carroll Parrish,[3] and Case Manager Vivian Lee Bailey (collectively, the State defendants), by their counsel, filed a motion to dismiss or, in the alternative, motion for summary judgment. ECF No. 27. Davis filed an opposition to the state defendants' motion and the State defendants filed a reply. ECF Nos. 37, 38.

A hearing is not necessary to resolve the issues presented. *See* Loc. R. 105.6 (D. Md. 2016).

### BACKGROUND

Davis is presently incarcerated at Roxbury Correctional Institution (RCI) in Hagerstown, Maryland. The complaint, which Davis filed on November 27, 2017, presents allegations premised on events that occurred during the time he was incarcerated at MCI-J. Davis faults the medical defendants for "failure to inquire into facts necessary to make a professional judgment, failure to carry out medical orders, judgment so egregiously bad that it really isn't medical," for environmental health and safety conditions which caused his ear infection, and for failing to treat his ear infection. ECF No. 1 at 10-11. He alleges that MCI-J has defective plumbing,

---

[2] Local Rule 105.2 (a) provides that "[u]nless otherwise ordered by the court, surreply memoranda are not permitted to be filed." A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve,* 268 F.Supp.2d 600, 605 (D. Md. 2003) (citation omitted). In this case, the court did not order a surreply.

[3] Parrish was Warden of MCI-J from February 4, 2015 to January 1, 2016. ECF No. 27-2 (Declaration of Nicole Daugherty, Case Management Supervisor).

2

[in]adequate toilets, and polluted drinking water "toxic to human health,"[4] and was exposed to flooding and human waste." ECF No. 1 at 11.

Regarding his medical claim, Davis states that on July 2, 2012, Bogucki Zygmunt, PA, examined him for an ear infection accompanied by discharges of blood and pus, and then sent him to Michael Gua, RN, ECF No. 1 at 3. Davis states that samples of the blood and pus discharge were taken from his right ear. ECF No. 1 at 8.

Davis asserts that on July 15, 2012, he awoke from his sleep, could not breathe, and his pillow was soaked with pus and blood. A correctional officer took him to the medical office. Davis saw a physician's assistant the next morning and "[t]est [sic] were taken again." ECF No. 1 at 8. Davis maintains that his right ear continued to discharge blood and pus.

On November 1, 2012, Davis complained to Vivian Bailey, his case manager, that he had been suffering ear discharge since July, and Bailey contacted Barbara Steele, R.N. ECF No. 1 at 8; ECF No. 1-5. Yonas Sisay, M.D. examined Davis and took more samples for testing. On November 19, 2012, Sisay diagnosed Davis with proteus mirabilis and E. coli otitis media in his right ear, a condition Davis asserts that he had for five months. ECF No. 1 at 9; ECF No. 1-4.

---

[4] Davis received a letter dated September 6, 2017, from Rosser Apperson, a regulatory and compliance engineer with the Maryland Department of the Environment, which informed Davis that the water supplied to MCI-J and the surrounding area is routinely tested. ECF No. 20-9 at 4-5. For the month of August, 2017, all 159 bacteriological samples tested for the Glen Burnie-Broadneck water system which supplies water to MCI-J and the community, were absent for total coliform, including E.coli. ECF No. 20-9 at 4-5.

Davis also filed a letter dated September 6, 2017, from Edward Cope, a program manager for water operations with the Anne Arundel County Department of Public Works. Cope explained that the County performs over 270 samples every month in the water distribution system, which includes E. Coli testing. ECF No. 1-11, p. 1. Anne Arundel County MCI-J water testing records indicate that for more than ten years, there has not been a positive test for total coliform in the system that distributes water to approximately 30,000 people and encompasses the area where MCI-J is located. *Id.* These letters belie his allegations concerning water quality.

3

Davis states that Sisay told him that the infection comes from water in the shower. ECF No. 1 at 9.

Davis maintains that there have been problems with the plumbing, water quality, and sewage at MCI-J since 2010, with the most recent problem, occurring in May of 2015, when inmates were not allowed to drink the water and sewage flooded the dining hall. ECF No. 1 at 9. Davis seeks monetary damages as relief. ECF No. 1 at 3.

Davis explains that he "tried to add my named Defendants in this case" by filing a third motion to amend the complaint in *Davis v. Maryland Department of Public Safety and Correctional Services*, *et al.*, Civil Action JFM-10-2009. In that case, Davis alleged violations of the Americans with Disabilities Act and claimed that he had received inadequate medical treatment for a hearing impairment[5] during the time he was confined at Roxbury Correctional and Eastern Correctional Institution.[6]

On July 20, 2011, Judge J. Frederick Motz granted Defendants' motion for summary judgment as to Davis' medical claims, denied summary judgment as to the ADA claims, and appointed counsel to represent Davis. JFM-10-2009, ECF Nos. 25, 26. On December 19, 2012, Davis, by his counsel, filed a motion for leave to file a third amended complaint, which sought to amend the complaint to bring claims of negligence and malpractice against six new defendants: Michael Gua, Assistant Nurse, Bogucki Zygmunt, Physician's Assistant, Vivian Lee Bailey, Case Manager, Barbara Steele, Head Nurse, Sisay Yonas, and Wexford Health Services, Inc., based on their alleged failure to treat him for his proteus mirabilis and Ecoli in his ear. JFM-10-2009, ECF No. 63. Davis, by his counsel argued that because his counsel is *pro bono*, it would

---

[5] Davis has a history of hearing impairment since 1999. ECF No. 1-4 at 1.

[6] Davis was transferred to MCI-J on June 17, 2010. JFM-10-2009, ECF No. 25 at 2.

be unlikely that Davis would obtain representation readily if he were to file "a new motion." JFM-10-2009, ECF No. 63 at 3. Defendant Nancy Bealer, R.N., filed an opposition to Davis' motion. JFM-10-2009, ECF No. 64.

Judge Motz denied Davis leave to file a third amended complaint on January 24, 2013, because the matters it alleged were "at best, tangentially related to the events giving rise to the original action." JFM-10-2009, ECF No. 66, 67. The Memorandum issued with the Order reads:

> Plaintiff is represented by court-appointed counsel. In his memorandum plaintiff states that unless the third amended complaint is filed, there is a likelihood that he would be required to file a new law suit in a pro se capacity.
>
> The present law suit was filed in 2010, and Nancy Bealer, R.N., who opposes plaintiff's motion, is a named defendant.
>
> Under the circumstances I have concluded that plaintiff's motion for leave to file third amended complaint should be denied. I recognize plaintiff's pro se status. However, if he has meritorious claims against the defendants whom he proposes to add, he may file a new law suit and this court, in accordance with its ordinary practice, will determine whether counsel should be appointed to represent him. In light of the fact that the proposed third amended complaint would add six new defendants, there would be inevitable delay in resolving the claims thus far asserted in this action. Defendant Bealer is entitled to a timely resolution of those claims.

JFM-10-2009, ECF No. 66 at 1.

In the instant complaint, Davis notes the language stating he could file a new lawsuit, "in which I'm doing now [sic]." ECF No. 1 at 10.

Davis eventually reached a settlement with respect to the State defendants in the earlier case and his claims against them were dismissed. JFM-10-2009, ECF No. 116. On December 12, 2014, Judge Motz granted Defendant Bealer's motion for summary judgment and entered judgment in her favor. JFM-10-2009, ECF Nos. 121, 122.

## STANDARD OF REVIEW

The medical defendants seek to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. In reviewing a complaint in light of a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all well-pleaded allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff. *Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 420 (4th Cir. 2005); *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), unsupported legal conclusions and conclusory factual allegations devoid of any reference to actual events, do not suffice, *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989*)*; *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

The State defendants argue for dismissal pursuant to Rule 12(b)(6) or in the alternative for summary judgment in their favor. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it

'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247-48. The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton,* 134 S. Ct. 1861, 1866 (2014) (per curiam), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993)).

## DISCUSSION

The medical defendants move for dismissal of the claims against them for failure to state a claim. They also raise the expiration of the statute of limitations as an affirmative defense. ECF No. 11. The State Defendants move for dismissal or for summary judgment on the grounds that the complaint fails to state a claim upon which relief can be granted, they are immune from suit, and the claims are partially barred by the statute of limitations. ECF No. 27.

**I.     Claims against the Medical Defendants**

"Section 1983 provides a federal cause of action, but in several respects relevant here, federal law looks to the law of the State in which the cause of action arose. This is so for the length of the statute of limitations: it is that which the State provides for personal-injury torts." *Wallace v. Kato*, 549 U.S. 384, 387 (2007) (citing *Owens v. Okure*, 488 U.S. 235, 249-50

(1989)). The applicable statute of limitations in Maryland is three years from the date of the occurrence. *See* Md. Code Ann., Cts. & Jud. Pro. § 5-101.

When a cause of action accrues under § 1983 presents a federal question. *See Nassim v. Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc). The date of accrual is "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Id*; *see also Halle Dev., Inc. v. Anne Arundel Cty.,* 121 Fed. Appx. 504, 507 (4th Cir. 2005) (stating the claim accrues when the affected party knew or should have known of the injury that is the basis of the action). Under the prison mailbox rule, an action under § 1983 is commenced for the purpose of meeting the statute of limitations when the complaint is delivered to prison staff for mailing and is no longer under the plaintiff's dominion and control. *See Houston v. Lack*, 487 U.S. 266, 276 (1988); *Lewis v. Richmond City Police Dep't.*, 947 F.2d 733 (4th Cir. 1991).

Of import here, the statute of limitations may be tolled for equitable reasons in "rare instances where, due to circumstances external to the party's own conduct, it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (en banc) (citing *Harris v. Hutchison*, 209 F.3d 325, 330 (4th Cir. 2000)). Equitable tolling is unavailable to a plaintiff who has not been diligent in protecting his or her rights; rather, the plaintiff must establish that he or she has been prevented from asserting those rights. Under Maryland law, the statute of limitations is strictly construed. *Hecht v. Resolution Trust Corp.,* 635 A.2d 394, 399 (Md. 1994) (holding that Maryland does not allow implied or equitable exceptions to the statute of limitations, absent legislative exception).

The statute of limitations is an affirmative defense that a party typically must raise in a pleading under Fed.R.Civ.P. 8(c), and is not usually an appropriate ground for dismissal. If, however, the facts necessary for the defense to prevail appear on the face of the complaint, the defense can be raised on a motion to dismiss. *Meridian Investments, Inc. v. Fed'l Home Loan Mortgage Corp.*, 855 F.3d 573, (4th Cir. 2017). In addition, "a court may take judicial notice of docket entries, pleadings and papers in other cases without converting a motion to dismiss into a motion for summary judgment." *Strickland-Lucan v. CitiBank, N.A.*, 256 F.Supp. 3d 616, 623 (D.Md. 2017). As always, the facts must be construed in the light most favorable to the non-movant.

The medical defendants assert that the statute of limitations on Davis' constitutional and state negligence claims began to run on July 2, 2012, when Davis first presented his complaint of an ear infection or, at the very latest, on January 24, 2013, when he was informed that he could file a new case against the Defendants in this case. ECF No. 11-2 at 5. Thus, when Davis filed the present complaint under the prison mailbox rule on November 20, 2017, the three year limitations period had long expired.

In his opposition, Davis states that he "looks to the fact that a federal Judge stopped" his court appointed counsel "from filing the allegations in 2012 until disposition of a case that contain [sic] some of the same defendants in this complaint. ECF No. 20 at 2 ¶ 6; *see also* ECF No. 20-1 at 4, 9. Davis avers that disposition of his earlier case occurred on December 12, 2014, (when the Court granted Bealer's motion for summary judgment); thus, when he filed the instant complaint on November 20, 2017, it was within the three year limitations period and timely. ECF No. 37-2 at 11. He further asserts in his opposition that his allegations of deliberate indifference take his claims "out of control of the statute of limitations." ECF No. 20 at 2 ¶ 6.

Later, in his opposition to the State defendants' dispositive motion, Davis professes that he understood Judge Motz's "order" in Civil Action No. JFM 10-2009 "as to wait for disposition of that case due to the Defendants [sic] entitlement of [sic] of a timely resolution" in that case. ECF No. 37-2 at 11. Davis argues "the Federal Judge did not state a positive date in which the court could look too [sic]," and asks "Is it unreasonable [for him] to have understood the Judges [sic] order to mean wait for disposition[?]." ECF No. 37-2 at 11-12.

The court finds Davis' position deficient in several respects. First, Judge Motz's memorandum plainly stated that Davis may file a new complaint. JFM-10-2009, ECF Nos. 66, 67. Davis was not directed to wait for disposition of his first case or, for that matter, to wait for any prescribed period of time before filing a new complaint. Although the court is mindful of Davis' current status as a self-represented litigant, his position is unsupported by a plain reading of the memorandum. Second, Davis provides no legal authority for his assertion that an allegation of deliberate indifference takes his claims "out of control of the statute of limitations," and this court is unaware that such authority exists. In short, these assertions are factually and legally unsupported.

The court finds that latest date of accrual when Davis could have been aware of the facts that gave rise to his cause of action, is January 24, 2013, when his counselled third motion to amend the complaint was denied and Davis, who was represented by counsel at that time, was informed that he may file a new law suit to present his claims against Defendants. Davis, however, filed this case more than three years later and his claims against the medical defendants are time-barred under the statute of limitations unless equitable tolling applies.

Contrary to Davis' mistaken belief, the Memorandum and Order did not restrict Davis from filing a new complaint until after disposition of his then pending action. Davis' own

10

misunderstanding and his lack of familiarity with the legal process does not amount to a circumstance external to his own conduct to constitute a basis for equitable tolling. *See e.g. United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). Accordingly, Davis' claims against the medical defendants are time-barred and must be dismissed.

## II. Claims against the State Defendants

### A. Statute of Limitations

The State defendants move for dismissal of the claims for injuries sustained before November 27, 2014, as barred under the statute of limitations. The complaint alleges that Davis complained to Defendant Bailey on November 1, 2012, of an ear infection. Bailey contacted Defendant Steele and Dr. Yonas saw Davis for his ear infection. Yonas allegedly told Davis on November 19, 2012, that the ear infection was due to the water at MCI-J. The State defendants posit that because Davis knew or had reason to know of a possible claim on this date, when he filed this complaint on November 27, 2017, the claim was barred by the three year statute of limitations. ECF No 27 at 8. For reasons discussed earlier in this memorandum, the court agrees. Davis' claims arising before November 27, 2014, three years from the filing of the complaint, are time-barred.[7]

### B. Claims Against DPSCS, MCI-J and the Individual State Defendants

To state a claim under Section 1983, a plaintiff must allege that: 1) a right secured by the Constitution or laws of the United States was violated and 2) the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). The State defendants assert that neither DPSCS nor MCI-J is a "person" under §1983

---

[7] The State defendants also filed verified copies of Davis' medical records between November 16, 2014, and November 27, 2017. The State defendants assert the records do not note any injury due to the alleged conditions of confinement. ECF No. 27-1 at 4, ECF No. 27-5.

11

and therefore those entities cannot be sued under the statute, and DPSCS and the individual State defendants in their official capacities are immune from suit under the Eleventh Amendment. ECF No. 27.

Under the Eleventh Amendment to the United States Constitution, a state, its agencies and departments are immune from suits for damages in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Bd. of Trs. of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001). "It is clear, of course, that in the absence of consent, a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* (citing *Florida Department of Health v. Florida Nursing Home Assn.*, 450 U.S. 147 (1981) (per curiam)). While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-202(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. State agencies such as DPSCS, *see* Md. Code. Ann., Corr. Servs. § 1-101(f), "are not persons within the meaning of the statute." *Lawson*, 2017 WL 3638431, at *4 (citing *Will*, 491 U.S. at 70); *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.,* 316 Fed.Appx. 279, 282 (4th Cir. 2009)("[T]he Maryland Department of Public Safety and Correctional Services is undoubtedly an arm of the state for purposes of § 1983" and therefore "immune from a suit under § 1983." (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280–81 (1977)). Thus, Davis' claims against DPSCS, an agency within the State of Maryland, are barred by the Eleventh Amendment.

MCI-J is a unit of the Maryland Department of Public Safety and Correctional Services and is not amenable to suit under § 1983. It is not subject to suit in federal court. A number of

courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law and are not subject to suit under § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, No. CIV.A. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (holding that Montgomery County Correctional Facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983."); *Preval v. Reno*, 57 F.Supp.2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F.Supp. 1294, 1301 (E.D. N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit.").

The Eleventh Amendment also bars claims brought against state employees in their official capacity. *See Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("state officers acting in their official capacity are also entitled to Eleventh Amendment protection"). "A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Consequently, the complaint fails to state a claim under § 1983 against the individual State Defendants in their official capacities or DPSCS. Accordingly, the claims against DPSCS, MCI-J and the individual State defendants in their official capacities will be dismissed for failure to state a claim on which relief can be granted.

### C. Personal Participation

Section 1983 imposes liability on "any person who shall subject, or cause to be subjected, any person ... to the deprivation of any rights...." 42 U.S.C. § 1983. The statute requires a showing of personal fault, whether based upon the defendant's own conduct or another's conduct

13

in executing the defendant's policies or customs. *See Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690 (1978); *West*, 815 F.2d at 996 (4th Cir. 1987), *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (requiring an affirmative showing that the official charged acted personally in the deprivation of the plaintiff's rights). Moreover, an individual cannot be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *See Monell*, 436 U.S. at 690; *Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983).

In a § 1983 proceeding, supervisory officials may be held culpable based on "'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Claims premised on supervisory liability must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud,* 13 F.3d 791, 799 (4th Cir. 1994).

Davis does not allege that Warden Parrish personally participated in the matters alleged. Further, he does not claim or allege facts suggesting that Parrish is liable under principles of supervisory liability. Thus, Parrish is entitled to dismissal of the claims against him. The sole reference made in the complaint to Bailey is that she contacted medical staff after Davis

complained to her on November 1, 2012[8] about his ongoing ear discharge.  Davis does not state why such action was wrongful, much less amounted to a violation of constitutional dimension.  Accordingly, this claim will be dismissed.

To the extent Davis raises negligence claims premised on Maryland tort law principles, the court declines to exercise supplemental jurisdiction over Davis' state law claims.

## CONCLUSION

For these reasons, the court will grant the medical defendants' motion to dismiss (ECF No. 11) and the medical defendants' motion to dismiss or, in the alternative, motion for summary judgment (ECF No. 27).  A separate Order follows.


August 29, 2018                                     /s/
                                              DEBORAH K. CHASANOW
                                              United States District Judge

---

[8] Even if Davis had raised a plausible claim against Bailey, the claim is time-barred for reasons earlier discussed.